**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| MARIBEL BEZA TOBAR,<br><br>    Plaintiff,<br><br>  v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>    Defendants. | Civil Action No.: 8:26-01886-TDC |

<u>**DEFENDANTS' RESPONSE IN OPPOSITION TO ECF NO. 2 MOTION FOR**</u>
<u>**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUCTION AND**</u>
<u>**MOTION TO TRANSFER**</u>

Kelly O. Hayes
United States Attorney

Ivory L. Macklin
Special Assistant U.S. Attorney
Beatrice C. Thomas
Assistant U.S. Attorney
U.S. Attorney's Office, District of Maryland
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
Telephone: 410-209-4800
beatrice.thomas@usdoj.gov
ivory.macklin@usdoj.gov
*Counsel for Defendants*

Table of Contents

I.     INTRODUCTION ....................................................................................................... 1

II.    BACKGROUND ......................................................................................................... 2

III.   LEGAL STANDARD .................................................................................................. 5

   A.   Subject Matter Jurisdiction............................................................................... 5

   B.   Improper Venue................................................................................................. 5

   C.   Temporary Restraining Order ........................................................................... 7

   D.   Preliminary Injunction ...................................................................................... 7

IV.    ARGUMENT .............................................................................................................. 8

   A.   8 U.S.C. § 1252(g) and 8 § U.S.C. 1252(a)(2)(B)(ii) deprives this Court of jurisdiction.8

   B.   Venue is not Proper in the State of Maryland ................................................. 11

      i.    Plaintiff could have filed her case in district where she resides (EDVA) and where USCIS is processing her application (DVT)...................................................... 12

      ii.   Plaintiff should have filed her case in district where she resides (EDVA) and where USCIS is processing her application (DVT)...................................................... 13

         a.   The Weight Accorded to Plainitff's Choice of Venue......................................... 14

         b.   Witness Convenience and Access; Convenience of the Parties.......................... 15

         c.   The Interest of Justice ....................................................................................... 18

   C.   Plaintiff cannot succeed on the merits. ........................................................... 19

      i.    USCIS provided the due Process required for the denial of TPS. .......................... 19

      ii.   Plaintiff is subject to a final order of removal. ...................................................... 21

      iii.  Plaintiff Fails to Satisfy the Other Requirements for a Preliminary Injunction. ...... 23

V.     CONCLUSION......................................................................................................... 23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MARIBEL BEZA TOBAR, <br><br> Plaintiff, <br><br> v. <br><br> MARKWAYNE MULLIN, et al., <br><br> Defendants. | Civil Action No.: 8:26-01886-TDC |

**DEFENDANTS' RESPONSE IN OPPOSITION TO ECF NO. 2 MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUCTION AND MOTION TO TRANSFER**

U.S. Department of Homeland Security ("DHS") Markwayne Mullin, United States Citizenship and Naturalization ("USCIS") Director Joseph B. Edlow, and Acting Director of U.S. Immigration and Customs Enforcement ("ICE") Todd Lyons, (together, the "Defendants"), by and through undersigned counsel, Kelly O. Hayes, United States Attorney for the District of Maryland, Ivory L. Macklin, Special Assistant United States Attorney and Beatrice C. Thomas, Assistant United States Attorney for said District respectfully submit this Response in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 3) and Motion to Transfer in accordance with this Court's May 15, 2026 Order.  ECF No. 11.

**I.      INTRODUCTION**

Plaintiff's Complaint for Declaratory and Injunctive relief ("Complaint") alleges violations pursuant to the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the Due Process Clause of the Fifth Amendment when, on April 21, 2026, Plaintiff's Temporary Protected Status ("TPS") was revoked ("Decision"). ECF No. 1 ¶¶ 37-43. Specifically, Plaintiff states that the termination of her TPS was arbitrary and capricious. *Id.* at ¶39. Plaintiff

also alleges that the Decision deprived her of due process. *Id.* at ¶42. Plaintiff maintains that the grounds for the Notice of Intent to Deny ("NOID") "identified one theory of inadmissibility, and the Decision relied on a fundamentally different theory." ECF No. 1 ¶ 42(a). Plaintiff requests that this Court declare the Decision arbitrary and capricious, vacate the Decision, and order that USCIS adjudicate Plaintiff's Forms I-290B and I-601. Additionally, Plaintiff seeks a preliminary injunction that mandates she not be removed from the United States pursuant to her Final Order of Removal pending the resolution of the merits of her Complaint. ECF No. 2 p. 5. On May 15, 2026, this Court ordered Defendants to respond to the motion for preliminary injunction. ECF No. 11.

Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") should be denied. Primarily, this Court lacks subject matter jurisdiction because 8 U.S.C. § 1252(g) since this case involves the lawful execution of a valid removal order. Even if this Court found against § 1252(g)'s jurisdictional bar, this case should be transferred from this Court for improper venue. Maryland is not the proper venue for this case as all actions subject to this Complaint and Motion for Preliminary Injunction occurred in the United District Court for the District of Vermont ("DVT") or the Eastern District of Virginia ("EDVA"). Apart from the jurisdiction and venue arguments, Plaintiff have not made the requisite showings for a preliminary injunction. She cannot establish a likelihood of success on the merits because USCIS did not arbitrarily terminate her TPS. USCIS followed the protocol providing due process. Plaintiff failed to file Form I-601 for a waiver as instructed by USCIS, and is now arguing against the outcome. Preliminary injunction is therefore not warranted.

## II.    BACKGROUND

Plaintiff is a El Salvadorian native who arrived in the United States without inspection and encountered immigration authorities. ECF No. 1 ¶ 13. Petitioner was issued a Notice to Appear at

2

the time of encounter after entering. *See* **Exhibit #1** (Removal Order). Petitioner was given first A-Number of A077-534-275 and showed the second last name of "Tovar." *Id.* Plaintiff failed to comply with the Notice to Appear and on August 24, 2000, Plaintiff was ordered removed in absentia to El Salvador. *Id.* On March 26, 2001, Petitioner applied for TPS. ECF No. 1 ¶ 16. Under this application, she received a second A-Number (A-094-415-468) and listed a second last name of "Tobar." ECF No. 9-3 pg. 43. The Subsequent applications also used the date of birth of October 12, 1977. *Id.* at p. 47. *See also* ECF No. 1 at ¶ 17. Plaintiff appears to have always lived in Virgina. *See* ECF No. 9-3 pgs. 43-61, and there is no records to demonstrate that Plaintiff has ever lived in Maryland.

On January 9, 2026, USCIS sent Plaintiff a NOID indicating that her differing dates of birth and second last name were a "willful misrepresentation of a material fact" and "was not waived as needed for TPS eligibility." **Exhibit #2** at p. 1 (NOID). USCIS also indicated that the "misrepresentation concerning an alien's identity is generally material because it almost always shuts off a line of inquiry that prevents the officer from determining the alien's eligibility for the benefit sought." *Id.* The benefit here being sought was TPS. USCIS stated that the identity of a person is material, and therefore not harmless, because "identity is not only material to TPS, but material to your overall admissibility under the Immigration and Nationality Act." *Id.* USCIS then stated that Plaintiff needed to file a I-601 waiver for the inadmissible ground of INA 212a(6)(C)(i) (8 USC § 1182(a)(6)(C)(i), fraud or willful misrepresentation. *Id.* at p. 2. That waiver would be pursuant to 8 USC § 1182(i) for "fraud or willful misrepresentation of material fact." The NOID was issued from the Vermont Service Center. **Exhibit #2**. at p. 1. The NOID and Decision sent to Plaintiff contains the signature name of Carrie M. Shelby, the Acting Associate Director, Service Center Operations from Vermont. *See id.* at p. 3; *see also* ECF No. 9-2 at p. 6.

3

Plaintiff failed to file the I-601 and instead filed a letter memo arguing that the NOID allegation that she is inadmissible under §212(a)(6)(C)(i) of the INA is incorrect. ECF 9-1 at p. 6. Plaintiff thus argued that because of that the error, there is no need for an I-601 waiver. *Id.* at p. 7. "INA §212(a)(6)(C)(i) renders an applicant inadmissible only where the applicant, by fraud or willfully misrepresenting a material fact, seeks to procure or has procured a visa, other documentation, admission into the United States, or another immigration benefit." *Id.* That benefit was TPS.

USCIS then issued the Decision. *See* ECF No. 9-2. The Decision indicated that TPS was denied because Plaintiff did not file an I-601 as instructed. The Decision also stated that by not disclosing the alternate identity, Plaintiff closed off a line of questioning that otherwise would have taken place for eligibility of TPS. *Id.* The Decision also addresses the letter memorandum that Plaintiff filed with USCIS. *Id.* at pp. 3-5.  USCIS indicated that the USCIS's Decision was also issued from the Vermont Service Center from the same signatory. ECF No. 9-2 at pp. 1, 6.

After the Decision terminated her TPS, Plaintiff was detained by ICE in Virginia on April 30, 2026, to effect the Order of Removal. **Exhibit #3** (Warrant of Removal/Deportation). On May 13, 2026, Plaintiff file this Complaint in the District of Maryland. Plaintiff was detained in Virginia. ECF No. 1 ¶ 8. Plaintiff was transferred to Texas. *Id.* Plaintiff, prior to detention, lived in Virginia. ECF No. 9-1. The only party that is located in Maryland is Respondent Edlow by way of the USCIS Headquarters being located in Maryland.

Plaintiff now argues that the Decision by USCIS was arbitrary and capricious, arguing that USCIS based the Decision on alleged faulty applications of law and alleged omissions not in the NOID. ECF No. 1 ¶¶ 38-43. Plaintiff also contends that she was denied meaningful notice of the decision to terminate her TPS. *Id.* at ¶ 6. Plaintiff maintains that venue is proper because the USCIS

4

headquarters is located in Maryland even though the Decision was made by a non-party in Vermont.

## III.    LEGAL STANDARD

### A.    Subject Matter Jurisdiction

A plaintiff who files suit in federal court must allege facts necessary to establish subject matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges a court's jurisdiction over the subject matter of the suit. The motion may either attack the court's subject matter jurisdiction by asserting "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982), or may assert that as a factual matter, the plaintiff cannot meet his burden of establishing a jurisdictional basis for the suit, see *id*. Under the latter approach, this Court "may consider evidence outside the pleadings" to determine whether subject matter jurisdiction exists. *In re KBR, Inc.*, 744 F.3d 326, 333 (4th Cir. 2014) (citation omitted). Moreover, there is a presumption that cases fall outside of a federal court's limited jurisdiction, and thus the "burden of establishing the contrary rests upon" the plaintiff. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

### B.    Improper Venue

"[A] court has no discretion to reach the merits of a case in which venue is improper and an objection to venue has been properly raised; the case must either be dismissed or transferred to a proper venue." *French Porte, LLC v. C.H.I. Overhead Doors, Inc.,* No. GJH-20-cv-00467, 2021 WL 242499, at *3 (D. Md. Jan. 25, 2021). As such, when confronted with issues regarding the merits of the case, and a question of proper venue, a court must first resolve the venue question. *Id*. citing *SAMi—Systematic Analysis Mgmt., Inc. v. Omnivere Acquisitions, LLC*, No. RDB-19-2904, 2020 WL 1863292, at *3 (D. Md. Apr. 14, 2020); *Johnson v. Helicopter & Airplane Servs.,*

5

*Corp.*, 389 F. Supp. 509, 518 (D. Md. 1974). "In the Fourth Circuit, when a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate." *Corporate Universe, Inc. v. Emry Capital Group, Inc.*, Civ. No. ELH-20-2925, 2021 WL 3603040, at *2 (D. Md. Aug. 12, 2021).

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district "[f]or the convenience of the parties and witnesses, in the interest of justice" so long as the transferee district is one where the case "might have been brought." Subsection 1404(a) affords the Court broad discretion in determining whether transfer to another district is appropriate. *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 55 (D.D.C. 2011) (citing *SEC v. Savoy Indus. Inc.,* 587 F.2d 1149, 1154 (D.C. Cir. 1978)). The moving party bears the burden of establishing that plaintiff's choice of forum is inappropriate and that the case should be transferred to another venue. *See So. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004).

To meet that burden, the moving party must make two showings. First, the movant must establish that the plaintiff could have brought the action in the proposed transferee district. *See Aracely v. Nielsen*, 319 F. Supp. 3d 110, 127–28 (D.D.C. 2018) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616–17 (1964)). Second, the movant must show that "considerations of convenience and the interest of justice weigh in favor of transfer to that district." *See Aracely*, 319 F. Supp. 3d at 127 (citing *Trout Unlimited v. U.S. Dep't of Ag.*, 944 F. Supp. 13, 16 (D.D.C. 1996)). In evaluating whether defendants have made this second showing, courts typically weigh several private- and public-interest factors. *See id.; Ravulapalli*, 773 F. Supp. 2d at 55–56. "[I]n deciding a motion to transfer, the pleadings are not accepted as true, and the Court may consider evidence outside the pleadings, including affidavits and declarations." *Newbauer v. Jackson Hewitt Tax Serv. Inc.*, 2019 WL 1398172, at *3 (E.D. Va. Mar. 28, 2019).

6

### C.   Temporary Restraining Order

A temporary restraining order ("TRO") or a preliminary injunction is warranted when the movant demonstrates that (1) the movant is likely to succeed on the merits, (2) the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities favors preliminary relief, and (4) injunctive relief is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). The movant must establish all four elements in order to prevail. *Accident, Inj. and Rehab., PC v. Azar*, 943 F.3d 195, 201 (4th Cir. 2019); *Frazier v. Prince George's County*, 86 F.4th 537, 544 (4th Cir. 2023) ("[A] preliminary injunction can be granted only if every factor is met[,] [y]et denying a preliminary injunction only takes the rejection of a single factor.") (internal citations omitted).

### D.   Preliminary Injunction

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), *see also SAS Institute, Inc. v. World Programming Ltd*, 874 F.3d 370, 385 (4th Cir. 2017) (satisfying four-prong test is "a high bar, as it should be."). The Fourth Circuit has emphasized that granting a preliminary injunction involves "the exercise of very far-reaching power," and that such relief should be awarded "only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001); *see also Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994) (mandatory preliminary injunctive relief "is disfavored and warranted only in the most extraordinary circumstances."). This Court must therefore exercise its discretion to grant injunctive relief with caution. *Seth v. McDonough*, 461 F. Supp. 3d 242, 257 (D. Md. 2020). This concern is even greater when, as here, the "requested immediate injunctive relief deeply intrudes into the core concerns of the executive branch." *Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir.

1978); *see also Sampson v. Murray*, 415 U.S. 61, 83–84 (1974) (A court is "quite wrong in routinely applying . . . the traditional standards governing more orthodox 'stays'" in an area to which "the Government has traditionally been granted the widest latitude.").

To obtain injunctive relief[1], the movant must clearly establish (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). "All four requirements must be satisfied." *Cantley v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014) (brackets omitted). The latter two factors "merge when the Government is the opposing party." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## IV.    ARGUMENT

### A.    8 U.S.C. § 1252(g) and 8 § U.S.C. 1252(a)(2)(B)(ii) deprives this Court of jurisdiction.

This Court lacks jurisdiction to review Defendants' removal of Plaintiff.  Section 1252(g) deprives district courts of jurisdiction to review "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien" under the INA, notwithstanding any other provision of law, except as otherwise provided in § 1252.  8 U.S.C. § 1252(g) (emphasis added). Interpreting this provision, the Supreme Court has held the statute's plain language bars any claim related to conduct falling within one of these three events—commencing proceedings, adjudicating

---

[1] "A preliminary injunction is distinguished from a temporary restraining order only by the difference in notice to the nonmoving party and by the duration of the injunction."  *See U.S. Dep't of Labor v.  Wolf Run Mining Co.,* 452 F.3d 275, 281, n. 1 (4th Cir. 2006) (*comparing* Fed. R. Civ. P. 65(a) *with* Fed. R. Civ. P. 65(b)).  A preliminary injunction cannot issue with notice to the nonmovant."  *Id.; see also* Fed. R. Civ. P. 65(a)(1).

cases, or executing removal orders. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). While section 1252(g) "does not sweep broadly," the provision's "narrow sweep is firm" and this Court cannot "entertain challenges to the enumerated executive branch decisions or actions." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021). It "precludes judicial review of 'any' challenge to 'the decision or action by [DHS] to . . . execute removal orders'" which "includes challenges to DHS's 'legal authority' to do so." *Id*. at 965 (alteration in original); *see also Camarena v. Director, ICE*, 988 F.3d 1268, 1273–74 (11th Cir. 2021) ("No matter how [the plaintiffs] characterize their claims, they amount to an attack on the government's execution of their removal orders. That runs afoul of § 1252(g): If we held otherwise, any Plaintiff could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order."). And, although authority exists permitting "substantive review of the underlying legal bases for" an execution of an order of removal, that review is limited to whether a removal order exists at all. *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006); *see also Camarena*, 988 F.3d at 1273.

Furthermore, 8 USC § 1252(a)(2)(B)(ii) deprives this court of Jurisdiction to review the discretionary relief of USCIS in terminating Plaintiff's TPS. 8 CFR § 244.14 provides the basis for withdrawal of TPS. Specifically, 8 CFR § 244.14(a)(1) states that "USCIS may withdraw the status of an alien granted [TPS] . . . at any timeupon the occurrene of any of the following: . . .the alien was not in fact eligible at the time such status was granted, or at any time thereafter becomes ineligible for such status." The word "may" indicates that the revocation is discretionary. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 13 (2024) (quoting *Biden v. Texas*, 597 U.S. 785, 802, 142 S.Ct. 2528 (2022) that the word "may" clearly connotes discretion).

Here, Plaintiff's claims are challenges to the execution of her removal order, and termination of her TPS. Review of those claims is barred in the district courts under §§ 1252(g) and (a)(2)(B)(i) and (ii). Plaintiff is asking this Court to review claims that arise from a discretionary decision to execute an enforceable removal order. To be clear, Plaintiff does not dispute that he has a final order of removal. Plaintiff also offers no evidence that the final order of removal was either vacated or stayed. And it has not been. Thus, this case involves the alleged harm that arises out of the execution of her valid final order of removal, and that review is barred under 8 U.S.C. § 1252(g). *See Foster v. Townsley*, 243 F.3d 210, 214-15 (5th Cir. 2001) (the claims are directly connected to the execution of the removal order, precluding subject matter jurisdiction under 8 U.S.C. § 1252(g)); *see also Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) (per curium) (the claims are directly connected to the decision to commence removal proceedings, precluding subject matter jurisdiction under 8 U.S.C. § 1252(g)). Thus, this is not a pure question of law, but a review of the lawful exercise of authority to execute a valid final order of removal.

Plaintiff also requests this Court to review her TPS denial from the NOID and Decision denying her TPS renewal application. ECF No. 1 ¶¶ 37-39. This can be nothing but a request for the review of discretionary withdrawal because of the failure to file a Form I-601 waiver in her individual case. USCIS found that she was ineligible due to the misrepresentation of her name and date of birth. ECF No. 9-2 at p. 3. USCIS issued its reasoning and jurisprudence behind the finding. *See id.* This made her ineligible for TPS, and therefore required her to file a Form I-601. Plaintiff did not file the waiver until after the Decision. *See* ECF No. 9-3 pp. 76-87. Because USCIS could not grant her a waiver pursuant to due to the failure to file the Form I-601, USCIS withdrew here TPS. *Id.* at p. 5. USCIS has the discretion to withdraw the TPS when Plaintiff became ineligible. 8 CFR

10

§ 244.14(a). Because USICS "may" withdraw the status, it is inherently discretionary, and not reviewable by the court under 8 USC § 1252(a)(2)(B)(ii). This regulation is derived from the discretion to grant in 8 USC § 1254a(a)(1)(A) in which the attorney general may grant the alien TPS. The granting and withdrawing of TPS are discretionary and therefor not reviewable under 8 USC § 1252(a)(2)(B)(ii). *See Bouarfa v. Mayorkas*, 604 U.S. 6, 13 (2024). Plaintiff's recourse is the appeal to the Administrative Appeals Unit that was stated in the Decision. Therefore, this Court lacks jurisdiction to hear Plaintiff's claims.

### B. Venue is not Proper in the State of Maryland

Alternatively, this case should be transferred as Maryland is not the proper venue.  A case may be transferred to any district where venue is proper "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp*., 487 U.S. 22, 29 (1988) (internal quotation marks omitted); *see also CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 771 (D. Md. 2009) (same). "To prevail on a motion under § 1404(a), the moving party must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests o*f the parties and witnesses and better promote the interests of justice."* Corcoran v. Peleus Ins. Co., TDC-20-1115, 2021 WL 3472664, at *4 (D. Md. Aug. 6, 2021).  "A § 1404 motion to transfer poses two questions: Could the plaintiff have sued in the transferee court?  And if so, should it have?" *McAfee, LLC v. USCIS*, No. 19-2981, 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019).  Because the answer to both questions is yes, the Court should transfer this case.

i.   *Plaintiff could have filed her case in district where she resides (EDVA) and where USCIS is processing her application (DVT).*

In this case, to justify Maryland as a proper venue, the Complaint asserts that the Decision "was taken by personnel subordinate to and supervised by Defendant Edlow." ECF No. 1 at ⁋ 7. Assuming *arguendo* that Plaintiff's claim is remotely true, Plaintiff offers no plausible reason for Maryland as a proper venue *other than* the fact that an individual in the DVT is a "subordinate" of the Director of USCIS, which is headquarted in Maryland. But as this Court has previously held, "the assertion that venue is appropriate in Maryland because USCIS's headquarters lie in Maryland finds scant support in the case law." *Chakrabarti v. USCIS*, PJM-21-1945, 2021 WL 4458899, at *6 (D. Md. Sept. 29, 2021); see also *Reyes v. United States Citizenship & Immigr*. Servs., No. CV DKC 24-316, 2024 WL 1806515, at *2 (D. Md. Apr. 25, 2024) (This Court transferred the case because "Maryland ha[d] no connection with this matter other than containing USCIS' headquarters."). And, in cases under the Administrative Procedure Act, 5 U.S.C. §§ 501 et seq. (the "APA"), as is the instant case, the underlying claim typically arises "where the decisionmaking process occurred." *Gyau v. Sessions*, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018). This Court has followed what many other courts have recognized, that the "decisonmaking process for adjudicating plaintiffs' visa applications occurs in USCIS service centers and field and regional offices, and any delay or improper denial—that is the "events or omissions" giving rise to their claims—occurred in the judicial districts covering those offices." *Manne v. Jaddou*, No. 21-1947 PJM, 2022 WL 102853, at *6 (D. Md. Jan. 11, 2022); *See Chakrabarti*, 2021 WL 4458899; *Pasem v. USCIS,* 2020 WL 2514749, at *3 (D.D.C. May 15, 2020) (quoting 28 U.S.C. § 1391(e)(1)); *Ike v. United States Citizenship & Immigr. Servs*., 2020 WL 7360214, at *1 (D.D.C. Dec. 15, 2020) (finding that plaintiff could have brought claim in district where USCIS service center was located); *McAfee, LLC*, 2019 WL 6051559, at *1) (same); *Pengbo Li v. Miller*, No.

1:20-cv-01122, 2021 WL 1124541, at *1 (D.D.C. Mar. 24, 2021) (collecting cases standing for the position that "challenges to individual immigration decisions generally arise in the forum of the USCIS service center that processed the application at issue"). Thus, the district where the plaintiff's application is pending before a USCIS office is also a viable venue.

In this case, Plaintiff could have brought her claims in the EDVA or the DVT, as there are no supported factual allegations suggesting that USCIS or ICE employees in Maryland instructed or otherwise executed Plaintiff's detention or termination of TPS. Plaintiff's official address in Falls Church, Virginia, is within EDVA. *See* ECF No 9-1. The NOID and Decision were both made in DVT. ECF Nos. 9-1 and 9-2. As this Court has previously held, where an individual resides and is arrested in one state but his "claims concern the conditions of . . . detention" in another state, venue is proper in the state of detention. *Proffitt v. Cipolla*, No. 07-cv-3377 (JFM), 2008 WL 11495176, *2 (D. Md. Jan. 3, 2008). And in this case, Plaintiff was not even detained in Maryland, but in EDVA. ECF No. 2 ¶ 5. Here, the underlying claim of termination of TPS originated in DVT, Plaintiff was detained in EDVA, and Plaintiff 's residence is in EDVA. As a result, the answer to the first question whether Plaintiff could have sued in the transferee court is yes.

> ii.   *Plaintiff should have filed her case in district where she resides (EDVA) and where USCIS is processing her application (DVT).*

As discussed above, after establishing that Plaintiff could have filed suit in the transferee district, the question becomes should she have done so? In answering that question, "the court must then 'weigh in the balance a number of case-specific factors.'" *Oeste v. Zynga, Inc.*, GLR-20-1566, 2021 WL 1785139, at *4 (D. Md. May 5, 2021) (quoting *Stewart Org.*, 487 U.S. at 29). Specifically, these factors include: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."

13

*Corp. Univ., Inc. v. Emry Cap. Grp.*, 20-2925, 2021 WL 3603040, at \*3 (D. Md. Aug. 12, 2021) (quoting *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, Inc., 791 F.3d 436, 444 (4th Cir. 2015)). This Court "enjoys broad discretion to determine whether transfer is appropriate." *Manne*, 2022 WL 102853, at \*6. Application of these factors militates heavily in favor of transferring this case.

> a.   <u>The Weight Accorded to Plainitff's Choice of Venue.</u>

The weight accorded to a plaintiff's choice of forum "should be proportional to the relationship between the forum and the cause of action." *Lebbin v. Transamerica Life Ins. Co.*, No. 8:17-cv-01870, 2018 WL 2013054, at \*2 (D. Md. Apr. 30, 2018).  The weight of a plaintiff's choice of forum "is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002); *Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693, 709 (D. Md. 2021) (quoting *Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp.,* 227 F. Supp. 2d 581, 583 (E.D. Va. 2002)) ("[T]he plaintiff's chosen venue is not given … substantial weight when … the cause of action bears little or no relation to that forum."); *Manne*, 2022 WL 102853, at \*7 ("when a plaintiff chooses to bring suit in a forum that is not plaintiff's home forum, deference is less likely.").  Here, Plaintiff's allegations of wrongdoing stem from actions taken outside the state of Maryland.  Plaintiff's detention in EDVA and termination of TPS in DVT occurred outside the District of Maryland. There is no evidence that Plaintiff was ever located in Maryland. She was not in Maryland at the time she filed this lawsuit. She was not in Maryland when she was detained. She was not in Maryland when USCIS Vermont Service Center issued the NOID or Decision.

Plaintiff makes no plausible allegations tying the actions of the EDVA ICE or DVT USCIS officers to Maryland other than the head of the USCIS, whose headquarters is in Maryland,

14

oversees the entirety of USCIS. Plaintiff makes no showing—nor can she—that of the claims arising in this suit, that she was ever detained in Maryland, or that any of the actions for which she has now filed suit took place in Maryland. Plaintiff's TPS filings were taken and accepted by USCIS in DVT. *See* ECF No. 1 pp. 19-37.

Under these circumstances, deference to Plaintiff's choice of forum is not appropriate and should be afforded no weight

b. <u>Witness Convenience and Access; Convenience of the Parties</u>

"This Court has noted that 'motions to transfer have been regularly granted where the defendant has shown that most of its key witnesses are residents of another district.'" *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 465 (D. Md. 2000) (quoted in *Salomon*, 268 F. Supp. 3d at 775). Courts consider witness convenience to be "perhaps the most important factor to consider when analyzing a § 1404(a) motion to transfer venue." *Ralph v. Long*, No. 99-cv-3281 (DKC), 2001 WL 706034, at *3 (D. Md. June 14, 2001) (quoted in *Salomon*, 268 F. Supp. 3d at 775). To evaluate this factor, courts compare the number of "substantive" or "key" witnesses located in the plaintiff's chosen venue compared to the defendant's proposed venue. *See Salomon*, 268 F. Supp. 3d at 775–76 (internal quotations omitted).

Notably, not one key witness to any of Plaintiff's causes of action reside in or are located in Maryland. And Plaintiff fails to show otherwise. Regarding detention and transfer, key witnesses are in EDVA; concerning her termination of TPS, the service center, and Acting Associate Director Carrie Shelby, who resides and operates in DVT. *See* ECF Nos. 9-1 and 9-2. Based on Plaintiff's allegations, the individuals who detained her and transferred her are in the EDVA; individuals who decided to deny her reapplication for TPS are based in DVT and took their actions in DVT. **Exhibit #2** and ECF No. 9-2. Plaintiff herself was located in EDVA at the time of all key events in this case. There are no facts in the Complaint or any of the attached

15

documents alleging that anyone who had control over these decisions had any control or authority over the actions of either EDVA or DVT USCIS except that the Head of USCIS whose headquarters is in Maryland has a subordinate who resides and operated in Vermont. Thus, this factor weighs in favor of venue transfer.

Courts typically consider the second and third factors—witness convenience and access, and convenience of the parties—together. *See, e.g., Payne v. Howard Univ.*, RDB-20-1314, 2020 WL 7588260, at *4 (D. Md. Dec. 22, 2020) (analyzing the second and third factors together). These factors also favor transferring the case. Generally, Courts disregard convenience of counsel. *Manne v. Jaddou*, No. 21-1947 PJM, 2022 WL 102853, at *8 (D. Md. Jan. 11, 2022) ("[T]he location of counsel is not really a factor that even enters into the equation, much less does it tilt the argument as to transfer in Plaintiffs' favor."). *See also Case v. Miller*, No. 3:09CV430-HEH, 2009 WL 2762606, at *2–3 (E.D. Va. Aug. 27, 2009) (internal quotation omitted) (citing *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043 (3d Cir. 1973)).

First, Plaintiff resides outside of Maryland in the requested forum and thus, cannot allege inconvenience by a transfer there. *See Akinyode v. U.S. Dep't of Homeland Sec.*, 2021 WL 3021440, at *4 (D.D.C. July 16, 2021) (transferring a case to a plaintiff's home district where plaintiff could "not identif[y] any detriment to himself should the case be transferred," and "[i]ndeed, it seems more convenient for [plaintiff] to adjudicate his dispute in his home forum"); *Koratala v. Mayorkas*, 2021 WL 796260, at *2 (D.D.C. Mar. 2, 2021) ("[B]ecause Plaintiffs do not live [here], the Court does not find that this judicial district presents any obvious conveniences for Plaintiffs that might militate against transfer."); Aishat v. U.S. Dep't of Homeland Sec., 288 F. Supp. 3d 261, 270 (D.D.C. 2018) (holding that the convenience factors "favor transfer" where plaintiff lives in the requested transferee district "so he cannot reasonably claim to be

inconvenienced by litigating in his home forum") (cleaned up).  And there are no conveniences to the USCIS in litigating this case here—as there are no substantive ties to Maryland.  *See Koratala*, 2021 WL 796260, at *2 (observing, in a USCIS mandamus case, that "Defendants have requested the transfer in question, and the Court, therefore, presumes that the transferee forum will present sufficient conveniences to Defendants").

Likewise, the district encompassing the USCIS office adjudicating the application has closer ties to this case than does Maryland.  For one, the adjudicators work in that district.  See *Holovchak v. Cuccinelli*, 2020 WL 4530665, at *5 (E.D. Pa. Aug. 6, 2020) (noting that the "convenience factor" "likely weighs in favor of transfer because the relevant adjudicators are located in the [transferee district"); *see also Pasem*, 2020 WL 2514749, at *4 ("The USCIS personnel who best know the individual causes of any delays in processing times will also be available at those centers; thus, the convenience to witnesses also tips the scales in favor of transfer.").  And the administrative record and other relevant documentation is in the requested district.  *See Manne*, 2022 WL 102853, at *7 (the location of the administrative record carries some weight) (citations omitted); *Koratala*, 2021 WL 796260, at *2 ("[T]he Court finds that because the District of Vermont comprises the USCIS service center processing [plaintiff]'s visa application, a transfer to that judicial district will generate added conveniences for the purposes of potential witnesses and the collection of relevant documentation."); *see also Abusadeh v. Chertoff*, 2007 WL 2111036, at *8 (D.D.C. July 23, 2007) (transferring USCIS mandamus case, noting that the complaint "seeks expedition of a decision that will be made in … Texas," and "[t]herefore, to the extent that any relevant witnesses and documents exist, they will be the individuals involved in making the ultimate decision on Plaintiff's application for naturalization as well as the documents and records related to his application, all of which are located in … Texas").In this

case, in addition to all key witnesses being in the DVT, the U.S. Attorney's Office for DVT is more familiar with witnesses and procedures at the USCIS Vermont Service Center. To the extent that hard copy documents exist, those would also be in DVT. Thus, DVT is the venue most convenient to the parties.

c. The Interest of Justice

Finally, transferring the case is in the interest of justice. Broadly, this consideration encompasses "all those factors bearing on transfer that are unrelated to the convenience of witnesses and parties." *Cross v. Fleet Rsrv. Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005). This factor is "amorphous and somewhat subjective," and allows a court to "consider many things." *Kimber v. Plus3IT Sys., LLC*, ELH-18-3046, 2019 WL 1518970, at *6 (D. Md. Apr. 5, 2019). As this Court has explained:

> Such factors may include, for example, the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment. The court also considers the local interest in having localized controversies settled at home.
> *Clarendon Nat'l Ins. Co. v. Dan Ryan Builders, Inc*., CCB-19-3527, 2020 WL 4042900, at

*6 (D. Md. July 17, 2020) (cleaned up).

The main controversy in this case occurred in DVT, and DVT has an interest in deciding its resolution. "The 'interest of justice' factor is broad, encompassing all the factors beyond Plaintiffs' preferred forum and the convenience of witnesses and parties, allowing the court to take into account several considerations." *Chakrabarti*, 2021 WL 4458899, at *5. The interest of justice strongly favors transfer because "courts have a local interest in having localized controversies decided at home," *Claredon,* 2020 WL 4042900, at *6, including "controversies requiring judicial review of an administrative decision." *Gyau*, 2018 WL 4964502, at *2 (internal quotations omitted). "[C]ourts routinely grant motions to transfer in cases like the one at hand

18

where the only connection to the district is the location of a federal agency's headquarters." *Manne*, 2022 WL 102853, at *8 (quoting *Chakrabarti*, 2021 WL 4458899, at *6). Plaintiff's alleged particularized injury is felt by him outside of Maryland as a result of alleged action or inaction occurring outside of Maryland.  Here, the Complaint alleges an erroneous denial of TPS.  ECF No. 1, ¶¶ 38-41.   The challenged actions, policies, and procedures are those of the DVT USCIS Vermont Service Center and the officials who are employed there.  DVT has an interest in ensuring the compliance of decisions in line with the law.  Thus, this factor also weighs in favor of transferring the case to the DVT.

For these reasons, Defendants respectfully request the Court transfer this case to the DVT or EDVA.

## C.    Plaintiff cannot succeed on the merits.

Plaintiff cannot succeed on the merits because he cannot prove that her TPS denial lacked due process or was arbitrary.

### i.    *USCIS provided the due Process required for the denial of TPS.*

Plaintiff reapplied for TPS and received the NOID due to a finding that there was a misrepresentation of a material fact, identity, due to the second last name, and the date of birth being different from the time of apprehension and the filings of TPS, and that is inadmissibility under as fraud or willful misrepresentation. INA § 212A(6)(C)(i) (codified in 8 U.S.C. § 1182(a)(6)(C)(i)). ECF No. No. 9-1 pgs. 3-4. USCIS then invited Plaintiff to file a Form I-601 for a waiver with the Vermont Office which is a waiver under 8 U.S.C. § 1254a(c)(2)(A)(ii) and 8 CFR § 244.3(b). *See* ECF No.  9-1 p. 4. This was because the material fact was not waived as needed for TPS eligibility. *Id*. at p. 3. USCIS indicated that "a misrepresentation concerning an alien's identity is generally material because it almost always shuts off a line of inquiry that

prevents the officer from determining the alien's eligibility for the benefit sought." **Exhibit #2** at p. 1. USCIS then explained the process of how to file the form with USCIS. *Id.* at p. 2. USCIS then also indicated that if granted, it would apply to that TPS and subsequent TPS applications. *Id.* The Decision also informed Plaintiff that she may file an appeal of the decision. The administrative procedure required in 8 USC § 1254a(b)(5)(B) of the withdrawal is codified as 8 CFR § 244.14(b)(1). Plaintiff was provided written notice of the decision and all actions by USCIS for the NOID were in compliance with 8 CFR § 244.14(b)(1).

Instead of filing a Form I-601 and requested documents, Plaintiff sent a letter memo arguing against the inadmissibility ground. ECF No. 9-1 at pp. 6-9. Plaintiff argued that the record does not establish material misrepresentation to procure an immigration benefit, and therefor she is not inadmissible under INA § 212A(6)(C)(i). Of note, Plaintiff maintained that Plaintiff was not seeking, among other things, TPS during her entry. ECF No. 9-1 at p. 8.

Plaintiff argues that the Decision was based on a theory shift from the NOID and Decision. The NOID alleged a misrepresentation to immigration officers, and the Decision denied based on omissions on the 2001 TPS application. However, this is a fundamental misreading of the NOID. The NOID did not indicate that Plaintiff was seeking a benefit at entry. Instead, USCIS stated in the NOID, that it finds her "identity is not only material to [her] eligibility for TPS, but material to [her] overall admissibility under the [INA]." *Id.* at pg. 3 (emphasis added). USCIS then stated in the Decision that "by failing to disclose the use of an alternate identity, [Plaintiff] cut off a line of questioning material to your eligibility for TPS." **Exhibit #2** at p. 2. This clearly indicates that USCIS is stating that the difference between her names and dates of birth between that stated at her entry, and that stated on her applications for TPS (including the 2001 application), were the

20

reason for the need for a waiver. A waiver that Plaintiff did not provide and therefor required the denial of her TPS.

    *ii.  Plaintiff is subject to a final order of removal.*

  As recognized by the Supreme Court, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). Petitioner's detention remains constitutional as it serves a legitimate purpose—to ensure her presence for removal pursuant to her Final Order of Removal.

  As to her Due Process claim of entitlement to release, the Supreme Court also set forth a framework for analyzing the Constitutionality of post-final order detention under Section 1231(a)(6) in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In *Zadvydas*, the Court held that post-final order detention under Section 1231 is presumptively reasonable for six months. *Id.* at 701. An individual seeking release after six-months of post-final order detention can file a habeas petition and must first "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id*. Only after meeting this initial burden is the government required to "respond with evidence sufficient to rebut that showing." *Id*

  The Supreme Court in *Zadvydas* acknowledged that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. As such, the *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" before the burden shifts to the government to demonstrate removal is likely. *Id.* at 701.

  As such, to set forth a Constitutional violation for Section 1231 detention, an individual must satisfy the *Zadvydas* test. The Supreme Court held, in effect, that an alien's right to substantive due process could be violated by prolonged detention even if the alien's right to

procedural due process had been satisfied"); *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (Explaining that "*Zadvydas*, largely, if not entirely forecloses due process challenges to § 1231 detention apart from the framework it established."); *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020) (The Supreme Court "offered us a standard through which to judge indefinite-detention cases—the *Zadvydas* standard …. We see no cause to question the wisdom of that decision."); *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (The *Zadvydas* "test articulates the outer bounds of the Government's ability to detain aliens … without jeopardizing their due process rights."). "Specifically, the [*Zadvydas]* Court held that § 1231 authorizes post-removal-period detention only for 'a period reasonably necessary to bring about that alien's removal from the United States.'" *Castaneda v. Perry*, 95 F.4th 750, 756 (4th Cir. 2024). The 4th Circuit held that the period of detention after the removal period is "'reasonably necessary'" period is presumptively six months." *Id.* (internal quotes omitted).

Here, it is undisputed that there is a final order of removal against Plaintiff. It is also undisputed that her TPS application was denied. There is no evidence that she has appealed or reopened her removal proceedings to receive a stay. It is also undisputed that there is currently no mechanism, outside of this Court's current order, to stay the removal of Plaintiff. The order is currently final with no immigration process forbidding her removal. There are no more removal proceedings pending for Plaintiff. DHS is able to effect her removal pursuant to the final order of removal. Although Plaintiff has filed an appeal of the USCIS Decision, that does not entitle her to a stay of removal. Especially when she was expressly given the opportunity to request a waiver to renew her TPS, but did not until after the Decision denying her TPS for the very reason of not having a waiver of the misrepresentation. As such, Petitioner's claims that the decisions are arbitrary and capricious fail.

### iii. Plaintiff Fails to Satisfy the Other Requirements for a Preliminary Injunction.

For the reasons set forth above, Plaintiff is not likely to succeed on the merits of his claims. Because Plaintiff cannot establish likelihood of success on the merits, his Motion should be denied, and the Court's analysis of the *Winter* factors should end here.

Even if the Court were to determine that Plaintiff is likely to succeed on the merits, Plaintiff cannot establish irreparable harm. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. As stated above, the possibility of being entitled to relief was essentially waived when she did not file Form I-601 prior to the Decision.

As to the third and fourth *Winter* factors, the balance of equities does not favor Plaintiff and injunctive relief is not in the public interest, given that Plaintiff has a valid final removal order that had neither been stayed or vacated. There is a weighty public interest in ensuring the Executive can implement a unified course of conduct in foreign affairs, *i.e.* executing valid final orders of removal. "[M]atters relating 'to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.'" *Hernandez v. Mesa*, 589 U.S. 93, 103–04 (2020) (ellipsis in original) (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)). These interests tip the balance decisively against the Plaintiff's asserted interests and Plaintiff does not satisfy this factor.

## V.    CONCLUSION

Accordingly, for the foregoing reasons, this complaint should be dismissed in its entirety, or in the alternative, transferred to either the District Court for the District of Vermont, or the

23

Eastern District for the District of Virginia, or, in the alternative, Plaintiff's request for preliminary

injunction should be denied.

<div style="margin-left: 45%;">

Respectfully submitted,

Kelly O. Hayes
United States Attorney

/s/ *Ivory Macklin*
Ivory L. Macklin
Special Assistant U.S. Attorney
Beatrice C. Thomas (Bar No. 21969)
Assistant U.S. Attorney
U.S. Attorney's Office, District of Maryland
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
Telephone: 410-209-4800
beatrice.thomas@usdoj.gov
ivory.macklin@usdoj.gov
*Counsel for Defendants*

</div>

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 28, 2026, I electronically filed the foregoing *Defendants' Response in Opposition to ECF No. 2 Motion for Temporary Restraining Order and Preliminary Injunction and Motion to Transfer* with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all parties.

<div style="text-align:right">

*/s/ Ivory Macklin*

Ivory L. Macklin

Special Assistant United States Attorney

</div>