**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| MARIBEL BEZA TOBAR, | |
| Plaintiff, | |
| v. | |
| MARKWAYNE MULLIN, *in his official capacity as Secretary of Homeland Security,* JOSEPH B. EDLOW, *in his official capacity as Director of U.S. Citizenship and Immigration Services,* and TODD M. LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,* | Civil Action No. 26-1886-TDC |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Maribel Beza Tobar, a native and citizen of El Salvador, has filed a civil action against the Secretary of Homeland Security, the Director of United States Citizenship and Immigration Services ("USCIS"), and the Acting Director of United States Immigration and Customs Enforcement ("ICE"), in which she alleges that USCIS's decision to withdraw her Temporary Protected Status ("TPS") violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and the Due Process Clause of the Fifth Amendment to the United States Constitution. Beza Tobar has also filed a Motion for a Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(a), which is fully briefed. A hearing on the Motion was held on June 23, 2026, in relation to which the parties agreed that the Court should proceed to rule on the merits of this case based on the record currently before the Court. For the reasons set

forth below, the Court finds that the withdrawal of TPS violated the APA and due process and will enter judgment in favor of Beza Tobar.

## INTRODUCTION

On May 13, 2026, Beza Tobar filed the Complaint in this case, in which she seeks (1) a declaratory judgment finding that Defendants' April 21, 2026 decision to withdraw her TPS violated the APA and her procedural due process rights under the Fifth Amendment; and (2) an order vacating that decision and remanding this case to USCIS for an adjudication consistent with the law. In both the Complaint and the Motion for a Temporary Restraining Order ("TRO") or Preliminary Injunction, Beza Tobar sought a preliminary order that would maintain her presence in the United States during the pendency of this case. On May 28, 2026, Defendants filed a memorandum in opposition to the Motion in which they included a Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). On June 23, 2026, the Court held a hearing at which it denied the Motion to Transfer Venue and the parties agreed to consolidate the preliminary injunction hearing with a trial on the merits, as permitted by Federal Rule of Civil Procedure 65(a)(2), and to have the Court resolve the merits of this case based on the present record, as permitted by Rule 52(a). Accordingly, pursuant to Rule 52(a) and Rule 65(a)(2), the Court now provides its findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff Maribel Beza Tobar was born on October 12, 1977 in Ahuachapán, El Salvador and remains a citizen of El Salvador. She entered the United States in 1999 and has resided in the United States for approximately 27 years. She has two United States citizen children.

2

## I.    Entry

On or about August 14, 1999, Beza Tobar entered the United States without inspection by crossing the border with Mexico near Eagle Pass, Texas.  Shortly after entering the United States, Beza Tobar was apprehended by officers of the Immigration and Naturalization Service ("INS"), the predecessor agency to ICE, USCIS, and United States Customs and Border Protection.  Beza Tobar has asserted, in a February 5, 2026 declaration, that when those immigration authorities asked her to state her name and biographical information, she orally "stated [her] name as Maribel Noemi Beza Tobar and [her] date of birth as October 12, 1977."  Beza Tobar Decl. ¶ 4, Compl. Ex. A at 15, ECF No. 9-1.  Nevertheless, Defendants' records show that her name was recorded at that time as "Maribel Noemi Beza-Tovar" and her date of birth as October 12, 1981.  In Spanish, the letters "b" and "v" as used in "Tobar" and "Tovar" have the same or a similar sound.  In relation to that encounter, Beza Tobar was assigned Alien Registration Number A077-534-275.  Compl. ¶ 13, ECF No. 1; Notice of Intent to Deny ("NOID") at 1, Opp'n Ex. 2, ECF No. 12-2.

Beza Tobar attests that she did not present any false documents during that encounter and that the only identity documents she had reflected her correct name and date of birth.  Beza Tobar Decl. ¶ 3.  Beza Tobar was "asked to sign a document" in English by the apprehending officers, but she asserts that she "did not understand what information was written on it at the time [she] signed it" because she does not read or understand English.  *Id.* ¶ 7.

On August 24, 2000, an immigration court in San Antonio, Texas held a removal hearing for Beza Tobar.  Because she had not provided immigration authorities with an address at the time that she was issued a Notice to Appear, and did not provide the immigration court with written notice of an address within five days, the immigration court was not required to provide her with written notice of the hearing.  *See* 8 U.S.C. § 1229a(b)(5)(B); 8 C.F.R. § 1003.18(b).  Where Beza

Tobar did not attend the hearing, the immigration court entered, in Case No. 77-534-275, an *in absentia* order of removal against "Beza-Tovar, Maribel Neomi" based on a presentation of evidence demonstrating that she was subject to removal. Removal Order at 1, Opp'n Ex. 1, ECF No. 12-1.

## II.    TPS

Generally, the Secretary of Homeland Security may designate a foreign nation for TPS under certain specified conditions, including when there is an ongoing armed conflict, natural disaster, or other extraordinary and temporary condition in that nation that would adversely impact the ability of its nationals to return safely to that country. *See* 8 U.S.C. § 1254a(b)(1). When such a designation is made, individuals residing in the United States who are nationals of that country may receive temporary immigration relief, including legal status, work authorization, and protection against removal. 8 U.S.C. § 1254a(a). For such an individual to be eligible for TPS, that person must, among other requirements, have maintained continuous physical presence in the United States since the effective date of the TPS designation, have maintained continuous residency since a designated date, be "admissible" as an immigrant, and not have a prior conviction for certain criminal offenses. 8 U.S.C. § 1254a(c).

El Salvador was designated for TPS on March 9, 2001. *Designation of El Salvador Under Temporary Protected Status Program*, 66 Fed. Reg. 14214 (Mar. 9, 2001). On March 26, 2001, Beza Tobar filed an application for TPS. In her application, Beza Tobar listed her name as "Maribel N. Beza Tobar" and listed her date of birth as October 12, 1977. TPS Application at 1, Compl. Ex. A at 41, ECF No. 9-1. In the box for "Other Names Used (including maiden name)," she wrote "N/A." *Id.* The application also lists Beza Tobar's Alien Registration Number as "77-534-275," identifies her place of entry into the United States as "Eagle Pass, Texas," lists her

4

manner of arrival as "E.W.I.," which refers to "entry without inspection," and states that she had prior immigration proceedings in Texas in 1999. *Id.* Although the first page of this application references "8-14-79" as her "Date of Entry into the U.S.," in two other places in the application she listed "8-14-99" as the date she entered the United States. *Id.* at 1–3.

On December 3, 2007, pursuant to an appeal, the USCIS Administrative Appeals Office granted Beza Tobar's TPS application. In relation to the TPS application, USCIS assigned to Beza Tobar a new Alien Registration Number, A094-415-468.

From 2007 through 2026, Beza Tobar continuously maintained TPS. Beza Tobar timely filed applications for renewal of TPS during every re-registration period. USCIS approved each re-registration and issued Employment Authorization Cards reflecting her TPS. Every USCIS identification document issued to her during that 19-year period bears her true name, "Maribel N. Beza Tobar," and true date of birth, October 12, 1977. Compl. Ex. A at 39, ECF No. 9-1.

## III.    Withdrawal of TPS

On January 9, 2026, USCIS issued a Notice of Intent to Deny ("NOID") Beza Tobar's most recent TPS re-registration because:

> [Y]ou were apprehended by Customs and Border Patrol on August 14, 1999 after illegally entering the United States by wading across the river from Piedras Negras to Eagle Pass, Texas. During this apprehension, you used the alternate name of Maribel Noemi Beza-Tovar and date of birth of October 12, 1981.
>
> While there is evidence that this fraud was known at the time your TPS was granted on December 3, 2007, the above, wil[l]ful misrepresentation of a material fact, your true identity, was not waived as needed for your TPS eligibility.

NOID at 1. The NOID further stated that Beza Tobar "must file an Application for Waiver of Ground of Inadmissibility (Form I-601)" with USCIS, and that her TPS application "will be denied unless you can show that you are eligible for a waiver of the following inadmissibility ground:

INA 212(a)(6)(C)(i) Fraud or Willful Misrepresentation." *Id.* at 1–2. Section 212(a)(6)(C)(i) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. 1182(a)(6)(C)(i), states that:

> Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.

8 U.S.C. 1182(a)(6)(C)(i). On February 9, 2026, Beza Tobar's counsel filed a timely response to the NOID, in which he argued that "the record does not establish that Ms. Beza Tobar willfully or materially misrepresented any fact to procure an immigration benefit." NOID Resp. at 1, Compl. Ex. A at 6, ECF No. 9-1. Among other points, Beza Tobar's counsel argued that she made no willful misrepresentation because, as stated by Beza Tobar in a declaration, she gave her true name and date of birth to INS officials in 1999, she used the same identifying information in all subsequent TPS filings, and she did not knowingly confirm any incorrect identifying information because she did not understand the English language form that she signed. He also asserted that any misrepresentation was not material or used to procure an immigration benefit because the misspelled name and the incorrect birth date did not render her inadmissible or otherwise assist her in gaining lawful status in the United States in 1999. Accordingly, he argued that Beza Tobar is not inadmissible under 8 U.S.C § 1182(a)(6)(C)(i).

On April 21, 2026, USCIS issued a Decision ("the USCIS Decision") to withdraw Beza Tobar's TPS and deny her re-registration application because:

> Under your alternate alien registration number, A077534275, on August 15, 1999, you were apprehended . . . after being taken off an east bound bus. It was determined you had entered the United States without having been admitted or paroled by immigration officials.

> At the time of your apprehension, you provided the following identity information to an immigration official:

> Name: Beza-Tovar, Maribel Noemi

6

Date of Birth: October 12, 1981
Nationality/Citizenship: El Salvador

\* \* \*

[Y]ou subsequently applied for TPS on April 30, 2001 under A077534275. You were granted initial TPS on Administrative Appeals Office (AAO) appeal on December 3, 2007 under the following identity:

Name: Beza Tobar, Maribel Noemi
Date of Birth: October 12, 1977
Nationality/Citizenship: El Salvador

While you indicated on your initial filing to previously being in removal proceedings, you did not disclose your August 1999 apprehension encounter or list the other identity under which this information was recorded.

\* \* \*

By failing to disclose the use of an alternate identity, you cut off a line of questioning material to your eligibility for TPS.

USCIS Decision at 2, Compl. Ex. B, ECF No. 9-2.

On April 30, 2026, ICE detained Beza Tobar at Riverside Regional Jail in North Prince George, Virginia. On May 5, 2026, Beza Tobar was taken to the bus station area of the jail and told that she was being deported. That same day, Beza Tobar's counsel filed with USCIS a Motion to Reopen and Reconsider the April 21, 2026 Decision (Form I-290B), and in the alternative, an Application for Waiver of Grounds of Inadmissibility (Form I-601) that did not concede that Beza Tobar is inadmissible. On June 6, 2026, USCIS rejected the Motion to Reopen on procedural grounds.

## CONCLUSIONS OF LAW

Beza Tobar challenges the USCIS Decision on two primary grounds. In Count 1, she argues that the USCIS Decision was arbitrary, capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A), including because it deemed her inadmissible pursuant to 8 U.S.C. §

1182(a)(6)(C)(i) based on fraud or a willful representation in seeking an immigration benefit without having satisfied the requirements for such a determination, and because it deemed her inadmissible based on a theory that was not presented in the NOID, in violation of its own regulation, 8 C.F.R. § 103.2(b)(8), and *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). In Count 2, she argues that the USCIS Decision was rendered in violation of her due process rights under the Fifth Amendment because it relied on a theory of inadmissibility different than the one referenced in the NOID and therefore denied her meaningful notice of, and an opportunity to respond to, the grounds for denial. As for relief, Beza Tobar requests that the Court issue a declaratory judgment that the USCIS Decision violated the APA and due process, issue an order vacating the USCIS Decision, and remand the case to USCIS for an adjudication consistent with the law.

## I.    Bars on Judicial Review

As a threshold issue, Defendants assert that Beza Tobar's claims fail because this Court may not review them based on certain provisions within 8 U.S.C. § 1252 that bar judicial review.

### A.    8 U.S.C. § 1252(a)(2)(B)(ii)

Defendants invoke 8 U.S.C. § 1252(a)(2)(B), which bars judicial review of:

> (i)    any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii)   any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

At the hearing, Defendants clarified that they are not arguing that § 1252(a)(2)(B)(i) is applicable here and instead are relying only on § 1252(a)(2)(B)(ii).

Defendants argue that in relation to § 1252(a)(2)(B)(ii), a withdrawal of TPS is a discretionary decision insulated from judicial review based on 8 C.F.R. § 244.14(a)(1), which states that "USCIS may withdraw the status of an alien granted Temporary Protected Status" when "[t]he alien was not in fact eligible at the time such status was granted, or at any time thereafter becomes ineligible for such status." *Id.* The language in this regulation appears to afford some discretion. However, the United States Supreme Court has held that the jurisdictional bar of § 1252(a)(2)(B) does not "encompass decisions specified as discretionary by regulation" but instead "bar[s] court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute," authority which is in most instances presently held by the Secretary of Homeland Security ("the Secretary"). *Kucana v. Holder*, 558 U.S. 233, 247–48 (2010); *see also Mestanek v. Jaddou*, 93 F.4th 164, 170–71 (4th Cir. 2024) (noting that the Homeland Security Act of 2002 largely transferred the Attorney General's authority over federal immigration laws to the Secretary of Homeland Security).

Here, the statute that governs withdrawal of TPS states that "[t]he Attorney General shall withdraw temporary protected status granted to an alien under this section if . . . the Attorney General finds that the alien was not in fact eligible for such status under this section." 8 U.S.C. § 1254a(c)(3). Similarly, 8 U.S.C. § 1182, the statute that designates the "[c]lasses of aliens ineligible for visas or admissions" and on which the inadmissibility determination was made, does not specify any discretionary authority of the Attorney General or the Secretary in making a determination that someone is inadmissible, including based on a willful misrepresentation under 8 U.S.C. § 1182(a)(6)(C)(i). Where Beza Tobar's claims challenge the withdrawal of her TPS based on a finding of inadmissibility under this provision, and no statutory provision establishes

that an authority exercised in doing so is discretionary, the Court finds that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar judicial review of Beza Tobar's claims.

### B.     8 U.S.C. § 1252(g)

Defendants also invoke 8 U.S.C. § 1252(g), which, as relevant here, provides that:

> Except as provided in this section and notwithstanding any other provision of law . . . including section 2241 of Title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g); *see Casa de Maryland v. U.S. Dep't of Homeland Security*, 924 F.3d 684, 696 (4th Cir. 2019) (acknowledging that this authority of the Attorney General is presently held by the Secretary of Homeland Security). Defendants argue that this provision bars judicial review of the USCIS Decision.

In *Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471 (1999), the Supreme Court held that 8 U.S.C. § 1252(g) bars judicial review of challenges to only "the three discrete actions" listed in the statute: the decisions to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Id.* at 482, 485–86. Thus, 8 U.S.C. § 1252(g) bars only challenges to the Secretary's "decision to exercise her discretion to initiate or prosecute these specific stages in the deportation process." *Bowrin v. U.S. Immigr. & Naturalization Serv.*, 194 F.3d 483, 488 (4th Cir. 1999); *see also AADC*, 525 U.S. at 483–84 (stating that § 1252(g) is a "special provision" relating to judicial review of these three actions in part because the Attorney General "has discretion" relating to whether to take these actions).

Here, Beza Tobar's claim does not challenge the Secretary's discretionary authority to execute a removal order but instead contests the USCIS decision to withdraw her TPS status, a decision which was not the initiation, adjudication, or execution of a removal order. Although

Beza Tobar's filings reference a possible preliminary injunction against removal, at the hearing, her counsel clarified that she seeks the vacating of the withdrawal of TPS based on legal arguments that the decision was arbitrary and capricious in violation of the APA, and violated her due process rights, not a ruling that invalidates or suspends the order of removal against Beza Tobar, which would remain valid and subject to execution in the event that TPS is at some point successfully withdrawn. In this way, the present case is distinguishable from authority relied upon by Defendants, in which petitioners specifically sought to halt the execution of a removal order, *see E.F.L. v. Prim*, 986 F.3d 959, 961–62 (7th Cir. 2021), including to allow a pending application for a different form of immigration relief to be adjudicated that would invalidate the order of removal, *see Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1271 (11th Cir. 2021), or asserted claims under the significantly different framework of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), relating to the manner in which an removal order was executed, *see Foster v. Townsley*, 243 F.3d 210, 212 (5th Cir. 2001); *Gupta v. McGahey*, 709 F.3d 1062, 1063, 1065 (11th Cir. 2013).

Further, as discussed above, the decision challenged by Beza Tobar—the withdrawal of TPS based on a finding of inadmissibility—is not a discretionary decision, *see supra* part I.A, such that her claims do not challenge the Secretary's "decision to exercise her discretion to initiate or prosecute" the execution of the removal order. *Bowrin*, 194 F.3d at 488. Accordingly, the Court concludes that 8 U.S.C. § 1252(g) does not bar Beza Tobar's claims.

## II. *Accardi* and Due Process

Beza Tobar contends that USCIS's withdrawal of TPS violated the APA and also the right to due process under the Fifth Amendment because USCIS failed to provide her with adequate notice of the basis of its grounds for withdrawal when the USCIS Decision relied on a basis

different from the proposed grounds for withdrawal identified in the NOID. As one part of this argument, Beza Tobar asserts that the failure to provide adequate notice violated USCIS's own regulation relating to the provision of an NOID and thus violated the doctrine established in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Under the *Accardi* doctrine, an agency's "failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination" upon a showing of prejudice. *United States v. Morgan*, 193 F.3d 252, 266–67 (4th Cir. 1999). Prejudice can be presumed when the regulations at issue consist of "an entire procedural framework, designed to insure the fair processing of an action affecting an individual." *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986) (approving of this analysis); *Morgan*, 193 F.3d at 267 (same); *cf. Bowens v. N.C. Dep't of Hum. Res.*, 710 F.2d 1015, 1019 (4th Cir. 1983) ("An agency's violation of its regulations is not unconstitutional unless the regulations are necessary to afford due process.").

The regulation at issue here, 8 C.F.R. § 103.2(b)(8)(iv), provides in relevant part that:

> A request for evidence or notice of intent to deny will be communicated by regular or electronic mail and will specify the type of evidence required, and whether initial evidence or additional evidence is required, or the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond.

8 C.F.R. § 103.2(b)(8)(iv). This regulation falls within the broader set of regulations setting the process for the "[s]ubmission and adjudication of immigration benefit requests." 8 C.F.R. § 103.2. Where this specific regulation is titled "Process" and establishes that an NOID must provide noncitizens "adequate notice and sufficient information to respond" to the purported "bases for the proposed denial," 8 C.F.R. § 103.2(b)(8)(iv), such as the reasons that the applicant is being deemed ineligible for the immigration benefit, the Court readily concludes that it is part of a framework

12

designed to ensure procedural safeguards and fair processing of an action affecting an individual, for which a failure to comply would be prejudicial. *See Delgado-Corea*, 804 F.2d at 263. Accordingly, a failure of an NOID to provide an applicant with adequate notice and sufficient information to respond to the purported reasons for ineligibility would violate the *Accardi* doctrine. *See id.* Indeed, at the hearing, Defendants' counsel acknowledged that the NOID had to comply with these requirements as a matter of due process.

Here, the USCIS Decision to withdraw Beza Tobar's TPS was based on a theory of inadmissibility that differed significantly from the one referenced in the NOID such that USCIS failed to provide Beza Tobar with "adequate notice and sufficient information to respond" to the purported reasons for denial. 8 C.F.R. § 103.2(b)(8)(iv). In the NOID, USCIS stated that it intended to deny Beza Tobar's application for re-registration for TPS because it deemed her inadmissible under 8 U.S.C. 1182(a)(6)(C)(i) based on a "wil[l]ful misrepresentation of a material fact" that had not been waived. NOID at 1. It specifically described that willful misrepresentation as occurring during her apprehension on August 14, 1999, when she "used the alternate name of Maribel Noemi Beza-Tovar and date of birth of October 12, 1981." *Id.* The USCIS Decision, however, after referencing the 1999 incident, stated that although Beza Tobar "indicated" in her April 30, 2001 TPS application that she had previously been in removal proceedings, she "did not disclose [her] August 1999 apprehension encounter or list the other identity" in that application. USCIS Decision at 2. The USCIS Decision focused its determination on the failure to disclose the use of a different identity in the 2001 TPS Application by providing the following reasoning that this alleged misrepresentation was a material one: "[B]y failing to disclose the use of an alternate identity, you cut off a line of questioning material to your eligibility for TPS." *Id.* at 2. The USCIS Decision then reasoned that "at the time your TPS application was granted, USCIS was not

13

provided information and evidence material to your eligibility and was not afforded the opportunity to pursue lines of inquiry in a timely and responsive manner. As such, USCIS has determined you are inadmissible to the United States under [8 U.S.C. § 1182(a)(6)(C)(i)] for Fraud or Willful Misrepresentation." *Id.* at 3.

Thus, the USCIS Decision based its determination of ineligibility on Beza Tobar's alleged failure to disclose in her 2001 TPS application that she had previously used a different name, "Beza-Tovar," and a different birth year during the 1999 encounter. *Id.* at 2. Yet the NOID made no reference to the 2001 TPS application or the alleged material omissions from that application that formed the basis of the USCIS Decision. At the hearing, when asked to identify language in the NOID providing notice that the denial of TPS would be based on the allegedly material omissions in the 2001 TPS application, Defendants' counsel pointed only to the following language:

> A misrepresentation concerning an alien's identity is generally material because it almost always shuts off a line of inquiry that prevents the officer from determining the alien's eligibility for the benefit sought.

NOID at 1. That language in no way references the 2001 TPS application, particularly where it followed a reference to the alleged misrepresentation made to immigration officials during Beza Tobar's 1999 entry. Defendants' counsel also briefly referenced the language stating that USCIS records confirmed Beza Tobar's apprehension on August 14, 1999 "[t]hrough fingerprint and biometric linking of your identity to A077534275," which was the Alien Registration Number assigned to Beza Tobar in 1999, but that language also fails to reference directly or indirectly the 2001 TPS application. *Id.*

The significance of the failure of the NOID to identify the alleged material omissions in the 2001 TPS application as the basis of the inadmissibility finding, and thus the inadequacy of

NOID's notice of the reasons for denial, is clearly illustrated by Beza Tobar's February 9, 2026 response to the NOID. In that response, Beza Tobar's counsel focused on the reasons that the "purported misrepresentation at the time of her entry into the United States in 1999," as referenced in the NOID, was not a willful, material misrepresentation. NOID Resp. at 1. Specifically, Beza Tobar's counsel asserted that the NOID did not establish willfulness because at the time of her apprehension in 1999, Beza Tobar provided her correct personal information orally and did not understand the form presented to her, which may have contained the mistakenly transcribed information, because of her lack of knowledge of English. Beza Tobar's counsel also emphasized that the alleged misstatements of her identity in 1999 were not material because at that point, the spelling of her name and year of birth gave her no advantage in gaining any immigration benefit, and she was not then seeking and did not receive any immigration benefits using that information.

Notably, Beza Tobar's counsel did not advance any arguments relating to the lack of willfulness or materiality of any statements in or omissions from the 2001 TPS application, such as the compelling argument presented to this Court: that the failure in that application to identify the use of an alternate identity could not have been willful because Beza Tobar specifically provided the Alien Registration Number assigned to her in 1999, as well as the date and place of her 1999 entry, from which the facts relating to her 1999 entry and subsequent order of removal could have been readily identified. Upon receipt of the USCIS Decision that relied on alleged material omissions in the 2001 TPS application, Beza Tobar's counsel then advanced this argument in the Motion to Reopen and in the filings to this Court. Thus, the fact that such arguments relating to the 2001 TPS application were not advanced in Beza Tobar's response to the NOID further demonstrates that the NOID provided inadequate notice of the grounds on which the USCIS Decision was rendered.

Accordingly, the Court finds that the NOID did not provide Beza Tobar with adequate notice and sufficient information to respond to reasons by which USCIS denied her TPS re-registration and withdrew her TPS, in violation of 8 C.F.R. § 103.2(b)(8)(iv) and in violation of the *Accardi* doctrine. *See Delgado-Corea*, 804 F.2d at 263.

Further, such a failure to provide notice of, and sufficient information on, the basis for an adverse immigration finding so as to allow a noncitizen a meaningful opportunity to contest it also violates the Fifth Amendment right to due process. *See Zerezghi v. U.S. Citizenship & Immigr. Servs.*, 955 F.3d 802, 813 (9th Cir. 2020) (holding that where USCIS and the Board of Immigration Appeals ("BIA") made a determination that the plaintiffs committed marriage fraud after having provided them only "a vague reference to unspecified 'records'" as the basis for the decision, those agencies had violated the plaintiffs' procedural due process rights by not disclosing "the complete administrative record on which USCIS and the BIA relied in reaching its determinations" and failing to providing plaintiffs with a "meaningful opportunity to respond" to those records); *cf. Mestanek*, 93 F.4th at 175 (finding no procedural due process violation where USCIS provided the plaintiffs with an NOID that "described in detail the derogatory evidence against them," provided "a chance to respond and submit rebuttal evidence," and issued "a careful decision considering that rebuttal evidence and explaining why it did not refute the agency's initial findings"). Thus, based on the same analysis of the same parts of the record underlying the Court's *Accardi* determination, the Court also finds that Defendants' failure to provide Beza Tobar with adequate notice of the basis for the ineligibility finding underlying the TPS withdrawal violated her procedural due process rights under the Fifth Amendment. *See Zerezghi*, 955 F.3d at 813; *see also Montilla v. Immigr. & Naturalization Serv.*, 926 F.2d 162, 167 (2d Cir. 1991) ("The *Accardi* doctrine is premised on fundamental notions of fair play underlying the concept of due process").

16

### III.    Arbitrary and Capricious

Beza Tobar also argues that the USCIS Decision must be set aside because it was arbitrary and capricious, in violation of the APA. Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Arbitrary-and-capricious review is "highly deferential, with a presumption in favor of finding the agency action valid," but does not "reduce judicial review to a rubber stamp of agency action." *CASA de Maryland, Inc.*, 924 F.3d at 703 (quoting *Friends of Back Bay v. U.S. Army Corps of Eng'rs*, 681 F.3d 581, 587 (4th Cir. 2012)). A court must conduct a "searching and careful inquiry" so that it "may consider whether the agency considered the relevant factors and whether a clear error of judgment was made." *Id.* (quoting *Friends of Back Bay*, 681 F.3d at 587). For an agency action to be upheld under the arbitrary-and-capricious standard, "an agency decision must show that the agency examined the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Appalachian Voices v. State Water Control Bd.*, 912 F.3d 746, 753 (4th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)).

Here, Beza Tobar argues that the USCIS Decision was arbitrary and capricious because in determining that she was inadmissible because she had engaged in fraud or a willful misrepresentation, it failed to consider all relevant factors as required under 8 U.S.C. § 1182(a)(6)(C)(i), which provides that:

> Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.

17

8 U.S.C. § 1182(a)(6)(C)(i). To make an inadmissibility determination under this subsection, the Government must establish "that the alien fraudulently or willfully misrepresented or concealed some material fact, and that such fraud or misrepresentation was used to seek a visa, documentation, or entry into this country." *Xing Yang Yang v. Holder*, 770 F.3d 294, 303 (4th Cir. 2014). "[A] determination that an alien made a willful misrepresentation requires that those specific elements be shown." *Id.* at 304. As to the willfulness requirement of 8 U.S.C. § 1182(a)(6)(C)(i), "a misrepresentation is willful if it was deliberate and voluntary," and "[k]nowledge of the falsity of the representation generally satisfies that standard." *Id.* at 303. However, "inconsistencies between a petitioner's . . . application and hearing testimony, as well as internal inconsistencies between a petitioner's . . . application and hearing testimony, may not equate to willful misrepresentations." *Id.* at 304 (quoting *Falaja v. Gonzales*, 418 F.3d 889, 898 (8th Cir. 2005)).

Under these principles, in considering an inadmissibility finding by an immigration judge, the United States Court of Appeals for the Fourth Circuit found that where there was a failure "to specify what evidence established the 'fraudulent' or 'willful' nature of [a petitioner's] inconsistencies," and where the petitioner had "explained that he had difficulty completing and reviewing the application forms because of the language barrier," the record did not sufficiently establish that the petitioner had made willful misrepresentations. *Id.* at 304–05. The court further found that because the petitioner's hearing testimony retracted more favorable statements in his asylum application, it "completely undermine[d] the notion that [the petitioner] attempted to use misrepresentations to procure an immigration benefit." *Id.* at 305.

Here, although the USCIS Decision states that "[t]he principal elements of a misrepresentation that renders an alien inadmissible under [8 U.S.C. § 1182(a)(6)(C)(i)] are

18

willfulness and materiality," it confined its discussion and findings to the issue of materiality, and concluded that because "[h]ad you indicated on your initial application that you previously presented yourself to an immigration official under an alternate identity, it is more likely than not your case and the evidence you submitted for TPS eligibility would have been held to a higher scrutiny than absent that information." USCIS Decision at 4–5. The USCIS Decision, however, provides no discussion of whether Beza Tobar's alleged misrepresentations were willful and identifies no evidence in support of such a finding. *Id.* Rather, the USCIS Decision acknowledges that Beza Tobar submitted an affidavit to USCIS in which she attested that when she "was asked to orally state [her] name and biographical information" in August 1999, she truthfully provided the name "Maribel Noemi Beza Tobar" and date of birth of October 12, 1977, that she never had any identity documents with a false name or date of birth, and that when she signed an English language document she could not read or understand it, but provides no basis to undermine the veracity of these statements. *Id.* at 3.

The failure to identify evidence of willfulness or even to discuss that element is particularly problematic where the record contains specific evidence beyond Beza Tobar's own statements that undermines a claim of willfulness. Specifically, the 2001 TPS application, submitted in response to the NOID, establishes that even though Beza Tobar did not disclose the prior use of any other names, she affirmatively disclosed specific facts relating to her 1999 entry into the United States during which the different personal information was recorded, including that she entered the United States without inspection on or about August 14, 1999 near Eagle Pass, Texas, and that she had previously been the subject of removal proceedings. Most significantly, she listed the Alien Registration Number, A77-534-275, provided to her during her original encounter with immigration authorities in August 1999 and used in relation to her 2000 removal

proceedings. An Alien Registration Number is the specific means by which immigration authorities can identify a noncitizen's prior history of entries to the United States and prior immigration proceedings and adjudications, including orders of removal. *See United States v. Sosa-Carabantes*, 561 F.3d 256, 258 n.3 (4th Cir. 2009) (noting that an "A-file number," referring to an Alien Registration Number, "identifies an individual by name, aliases, date of birth, and citizenship, and all records and documents related to the alien are maintained in that file"). Indeed, at the hearing, Defendants' counsel acknowledged that with Alien Registration Number A77-534-275, immigration authorities generally would have been able to see the entire record of events involving Beza Tobar in 1999. Where the provision in the 2001 TPS application of that Alien Registration Number and other information about Beza Tobar's 1999 entry is highly inconsistent with an intent to deceive or to knowingly provide false information, the Court cannot overlook the absence of any discussion of the willfulness element in the USCIS Decision and simply conclude that this element is established by the record.

Where the USCIS Decision identifies no evidence in support of a finding that the alleged misrepresentations were made willfully, and the record contains significant evidence to the contrary, the Court finds that it did not fulfill the requirement under 8 U.S.C. § 1182(a)(6)(C)(i) that "a determination that an alien made a willful misrepresentation requires that those specific elements be shown." *Xing Yang Yang*, 770 F.3d at 304 (finding insufficient evidence of willfulness in part because the decisionmaker failed to specify what evidence established the willful nature of the misrepresentation). Such a failure to a make a proper determination of willfulness, as required to find a noncitizen inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i), was arbitrary and capricious and contrary to law. 5 U.S.C. § 706(2)(A); *see Woods Petroleum Corp. v. Dep't of Interior*, 47 F.3d 1032, 1038 (10th Cir. 1995) (noting that administrative "rulings that either disregarded certain

factors or treated one factor as determinative" have been subject to reversal as arbitrary and capricious). Moreover, where the USCIS Decision does not even discuss the issue of willfulness, the Court finds that the USCIS Decision was arbitrary and capricious in that USCIS failed to conduct a "searching and careful inquiry" in which it "considered the relevant factors," *CASA de Maryland, Inc.*, 924 F.3d at 703, and failed to examine the relevant data and articulate "a satisfactory explanation for its action." *Appalachian Voices*, 912 F.3d at 753. The Court therefore finds that the USCIS Decision violated the APA.

## IV.    Remedy

Based on the above analysis resolving the merits of this case, the Court will issue judgment in favor of Beza Tobar and vacate the USCIS Decision, which will restore Beza Tobar's TPS. The Court will also issue a declaratory judgment that the USCIS Decision withdrawing TPS violated the APA and due process, and that her TPS and all related benefits are restored, and the Court will remand this matter to USCIS for further adjudication as necessary, consistent with the INA, all applicable regulations, and due process. Because the Court has resolved the merits of this case, the Motion for a TRO or Preliminary Injunction will be dismissed as moot. As the parties acknowledged at the hearing, under the TPS statute, Beza Tobar's prior order of removal cannot be executed while she maintains TPS. 8 U.S.C. § 1254a(a)(1) (stating that the Secretary "may grant the alien temporary protected status in the United States and shall not remove the alien from the United States during the period in which such status is in effect," and "shall authorize the alien to engage in employment in the United States").

Finally, consistent with the request by Beza Tobar's counsel at the hearing that Beza Tobar be released in the event that the Court rules in her favor, the Court acknowledges that with the restoration of TPS, she may not lawfully be detained and thus will order her release to comply

with that statutory prohibition. 8 U.S.C. § 1254a(d)(4) ("An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States").

## CONCLUSION

For the foregoing reasons, the Court finds in favor of Beza Tobar and will enter judgment for Beza Tobar. A separate Order shall issue.


Date:  July 2, 2026

THEODORE D. CHUANG
United States District Judge

22